**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REBECCA KEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-00068-SPM |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Rebecca Keil ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's applications.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   FACTUAL BACKGROUND

At the hearing before the ALJ, Plaintiff testified, *inter alia*, that she has pain in her stomach, hands, and feet; that she has nausea whenever she eats; that she vomits frequently, mostly in the morning or at night; that the pain in her stomach is worse when she eats; that she has constipation; that she has neuropathy and swelling in her hands and feet and sometimes drops things; that it takes her a long time to do household chores like cleaning and laundry because she needs to lie down and take breaks or go to the bathroom; that if she does normal activities, she will be in bed for a day; that she spends all day in bed three to four times a week; that she has anxiety and panic attacks and has difficulty talking to people or being in stressful situations; and that she sometimes has depression and cries a lot. (Tr. 1201-22). With respect to the medical records, the Court accepts the facts as set forth in the parties' respective statements of fact and responses. Briefly, the medical records show that Plaintiff has frequently sought and received treatment for abdominal pain, constipation, nausea, and vomiting; that she has been diagnosed with conditions including type 1 diabetes, neuropathy, irritable bowel syndrome ("IBS"), celiac disease, and major depressive disorder; and that she has consistently seen a therapist for excessive worry, depression, and low self-worth. The Court will cite specific portions of the transcript as needed to address the parties' arguments.

## II.   PROCEDURAL BACKGROUND

In October of 2021, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since June 15, 2020. (Tr. 1377-1384). Her applications were denied initially and on reconsideration. (Tr. 1275-94, 1297-1312). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 1313-14). After a hearing, the ALJ issued an unfavorable decision on December 15, 2023. (Tr. 14-38). Plaintiff filed a Request for Review of Hearing Decision with the

Social Security Administration's Appeals Council. (Tr. 1363-64). On November 19, 2024, the Appeals Council denied the request for review. (Tr. 1-3). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a

severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an

4

adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since June 16, 2020, the alleged onset date; that Plaintiff had the severe impairments of type 1 diabetes mellitus, diabetic polyneuropathy, hypothyroidism, irritable bowel syndrome, and major depressive disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 20-24). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. She can never climb ladders, ropes or scaffolds. She can frequently handle objects using the bilateral upper extremities. She must avoid moderate exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas. She must avoid moderate exposure to operational control of moving machinery and hazardous machinery. She must avoid unprotected heights. Her work is limited to simple and routine tasks. Her work must be in a low stress job, defined as having only occasional changes in the work setting. She cannot perform work that requires hourly quotas. She must have only occasional interaction with the public.

(Tr. 24). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 31-32). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as merchandise pricer and door to door pamphlet distributor. (Tr. 32-33). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Act, from June 15, 2020, through the date of his decision. (Tr. 33).

## V.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

6

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI.    DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds, arguing that the ALJ did not properly evaluate the medical opinion evidence, that the ALJ did not properly evaluate Plaintiff's subjective complaints of pain, and that the RFC assessment is not supported by substantial evidence. The Court considers each argument below.

### A.  Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly consider the medical opinion evidence offered by two of her treating providers: Les Olson, MA, LPC, and Eldad Bialecki, MD. Under the regulations applicable to Plaintiff's claim, the ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical

7

sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations); (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must "explain how [he or she] considered the supportability and consistency factors" in the decision. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

### 1.  Opinion of Les Olson, MA, LPC

On September 5, 2023, Les Olson authored a Medical Source Statement – Mental. (Tr. 2390-91). He stated that Plaintiff had Major Depressive Disorder with anxious distress and that she often presents with symptoms of depression including apathy, excessive worry, and loss of meaning and purpose. He opined that she had marked limitations in several areas: the ability to initiate and complete tasks in a timely manner; to ignore or avoid distractions; to sustain ordinary routine and regular attendance; to maintain concentration to persist at simple routine tasks eight hours a day, five days a week; to work a full day; and to regulate emotions and control behavior in a work setting.  He also opined that she had moderate limitations in ability to interact with others, function independently, and distinguish between acceptable and unacceptable work performance. He indicated that she could perform in a setting where supervisors provide simple instructions for non-detailed tasks with no more than four supervisor contacts per day and where

8

contact with the general public was only casual and infrequent. He opined that Plaintiff would need to be late to work or leave work early two or more days per month and would miss work two or more days per month because of physical symptoms and distress related to physical symptoms. Mr. Olson also authored a narrative Treatment Report indicating Plaintiff had been seen since August 1, 2019; stating that Plaintiff continues to experience frequent depressive episodes that are tied to her ongoing medical issues and the limitations they place on her quality of life; and stating that although she has made significant progress in treatment and in her ability to cope with ongoing symptoms, both her medical and psychological issues were ongoing. (Tr. 2386-87).

After summarizing Mr. Olson's opinion, the ALJ found it unpersuasive because it was "not supported by his opinion narrative or consistent with other medical records. (Tr. 31). The ALJ found that Mr. Olsen's "treatment report notes ongoing treatment for major depressive disorder with reported sadness, low self-worth, apathy, anxiety, excessive worry, and suicidal ideation with reported relationship problems, ongoing physical medical issues, significant progress with treatment, with ongoing weekly sessions, failing to support marked limitations in functioning." (Tr. 31). The ALJ further found that "[m]edical records regularly reflect a normal mood and affect, normal behavior, normal thought process, and normal judgment, inconsistent with marked limitations." (Tr. 31).

The ALJ adequately articulated his consideration of the supportability and consistency factors for Mr. Olson's opinion, and the ALJ's evaluation of the opinion was supported by substantial evidence. As to supportability, it was reasonable for the ALJ to find that the numerous "marked" limitations in functioning in the opinion were not entirely supported by either the

9

narrative accompanying Mr. Olson's opinion[2] or Mr. Olson's own treatment notes, which indicated that Plaintiff regularly reported symptoms of excessive worry, depression/sadness, low self-worth, interpersonal issues, and stress, but which contain very little information about how the reported symptoms would affect Plaintiff's functioning in the many areas in which Mr. Olson found marked limitations. (Tr. 31, 2666-783). As to consistency, it was reasonable for the ALJ to find that the numerous medical records showing normal mood and affect, normal behavior, normal thought process, and normal judgment were inconsistent with the marked limitations in the opinion. (Tr. 31, 688, 992, 1841, 1893, 1897, 1907, 1917, 2194, 2259, 2306, 2314, 2317, 2324, 2359, 2427, 2494, 2498, 2523, 2595). *See Halverson v. Astru*e, 600 F.3d 922, 930 (8th Cir. 2010) (ALJ properly discounted "extreme limitations" in a treater's opinion based in part on normal mental status examination findings). Elsewhere in the decision, the ALJ also discussed other aspects of the record relevant to consistency, including Dr. Politte's largely normal consultative mental evaluation of Plaintiff, Plaintiff's conservative course of mental health treatment, and Plaintiff's lack of need for inpatient mental health care during the relevant period. (Tr. 27, 29-30, 2238-43). The Court also notes that although the ALJ found the marked limitations in Mr. Olson's opinion unpersuasive, the ALJ included in the RFC numerous limitations related to Plaintiff's mental symptoms, finding that Plaintiff could only perform simple and routine tasks, could perform only a low stress job involving only occasional changes in the work setting and no hourly quotas, and could have only occasional interactions with the public.

---

[2] Plaintiff argues that the ALJ incorrectly stated that Mr. Olson's opinion "lacked a narrative." ECF No. 17, at 6. The Court disagrees. The ALJ acknowledged the existence of the narrative but found the opinion "not supported by his opinion narrative." (Tr. 31).

In sum, the ALJ's decision of Mr. Olson's reflects a careful consideration of the record and the relevant factors. Although the ALJ could have decided to come to a different conclusion about the weight to give to Mr. Olson's opinion, the Court finds no error.

### 2. Opinion of Eldad Bialecki, MD

On September 11, 2023, Dr. Bialecki completed a Gastrointestinal Questionnaire for Plaintiff. (Tr. 2488-89). Dr. Bialecki indicated that he had treated Plaintiff since July 14, 2020; that she had symptoms of abdominal pain, cramping, nausea, and vomiting; that her clinical findings and objective signs were nausea, vomiting, and a bloated and distended abdomen; and that she had diagnoses of celiac disease, constipation, nausea, and vomiting. He opined that she has generalized abdominal pain that is sharp after eating and that can be debilitating. He opined that her symptoms would interfere with the attention and concentration needed to perform even simple work tasks more than 20% of the time; that she would need a job that permits shifting positions at will; that she needs ready access to a restroom; that she would need unscheduled restroom breaks two to four times during an eight-hour working day for about 30 to 60 minutes on very short notice; that she would need to lie down or rest one to three times a week for 30 minutes during the work day; and that she would likely be absent from work three or more days a month.

After summarizing Dr. Bialecki's opinion, the ALJ found it was unpersuasive because it was "not supported by his office's treatment notes or consistent with other medical records." (Tr. 31). The ALJ found that "[t]reatment notes from [Dr. Bialecki's] office regularly reflect normal examinations with no gait deficits or difficulty sitting, no persistent issues with incontinence or diarrhea, and no fatigue, failing to support the severity of limitation he suggests." (Tr. 31). The ALJ further found that "[o]ther records reflect occasional reports of vomiting, but generally normal examinations with no distress, intermittent abdominal tenderness, normal bowel sounds, no

11

guarding or distension, normal musculoskeletal range of motion, normal sensation and reflexes, no edema, no focal neurological deficits, normal coordination, and a normal gait, inconsistent with the degree of limitation he suggests." (Tr. 31).

The ALJ adequately articulated his consideration of the supportability and consistency factors for Dr. Bialecki's opinion, and the ALJ's evaluation of this opinion was supported by substantial evidence. With regard to supportability, the record supports the ALJ's finding that "treatment notes from [Dr. Bialecki's] office regularly reflect normal examinations with no gait deficits or difficulty sitting, no persistent issues with incontinence or diarrhea, and no fatigue, failing to support the severity of the limitations he suggests." (Tr. 31). A review of treatment notes from Dr. Bialecki's office[3] indicates that Plaintiff often complained of nausea, vomiting, and constipation but only intermittently complained of abdominal pain and diarrhea, that she did not complain of difficulties sitting or walking, and that she was usually found to have largely normal objective examinations (except for occasional abdominal tenderness). (Tr. 1899-1903, 1908-10, 1911-13, 2473-77, 2478-82, 2520-23). It was reasonable for the ALJ to find that these notes did not support the limitations Dr. Bialecki's opinion that Plaintiff would need to be able to shift positions at will, would need to lie down during the workday, and would need frequent long and unscheduled restroom breaks. With regard to consistency, the record supports the ALJ's finding that "[o]ther records reflect occasional reports of vomiting, but generally normal examinations with no distress, intermittent abdominal tenderness, normal bowel sounds, no guarding or distension, normal musculoskeletal range of motion, normal sensation and reflexes, no edema, no focal neurological deficits, normal coordination, and a normal gait, inconsistent with the degree of limitation he suggests." (Tr. 31, 1855-56, 1861, 1865-66, 1893, 1907, 2148, 2240, 2263, 2306,

---

[3] At most visits, Plaintiff saw a nurse practitioner in Dr. Bialecki's office.

2314, 2317, 2426, 2498, 2502, 2595). Elsewhere in the decision, the ALJ also noted that Plaintiff reported improvements in her IBS symptoms with medication and dietary changes. (Tr. 29, 1855, 1866).

Plaintiff argues that the ALJ should not have considered normal physical examinations when evaluating Dr. Bialecki's opinions because IBS may present with normal physical examinations. The Court finds no error. The ALJ acknowledged that Plaintiff had IBS, that Plaintiff's IBS was a severe impairment, and that Plaintiff's IBS symptoms required the inclusion of significant limitations in the RFC. However, the ALJ was not required to uncritically accept each of the specific limitations in Dr. Bialecki's opinion simply because Plaintiff had IBS. In assessing whether Plaintiff's IBS would require her to shift positions at will, take unscheduled breaks, lie down, and miss work, the ALJ reasonably considered the normal objective examinations along with other relevant evidence such as whether Plaintiff reported persistent diarrhea or incontinence. Notably, Plaintiff does not direct the Court to any records from Dr. Bialecki's office that *do* support the limitations in the opinion, nor does she explain how those notes support those limitations.

In sum, although the ALJ could have decided to come to a different conclusion about the weight to give to Dr. Bialecki's opinion, the Court finds no error.

### B.  Pain Evaluation

The Court next considers Plaintiff's argument that the ALJ did not conduct a proper analysis of Plaintiff's subjective complaints of pain.[4] "When evaluating the claimant's subjective

---

[4] In making this argument, Plaintiff relies on *Clevenger v. Astrue*, No. 4:10-CV-1973-AGF, 2012 WL 1072751, at *14–15 (E.D. Mo. Mar. 29, 2012). *See* ECF No.17, at p. 8. After a diligent search of both Westlaw and CM/ECF, the Court cannot find this case, and it does not appear to exist. Additionally, Plaintiff's brief contains several links to websites about IBS that either cannot be found or do not contain the language Plaintiff purports to quote from them. *See id.* at pp. 3-4. The

complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. §§ 404.1529(c), 416.929(c). "The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). Although the ALJ may consider objective medical evidence, it is well settled that "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson*, 600 F.3d at 931-32.

At the outset, the Court notes that the ALJ acknowledged that Plaintiff had significant abdominal pain and neuropathy in her hands and feet, finding that due to those symptoms, she was limited to light work with no climbing ladders, ropes, or scaffolds, and that she must avoid

---

arguments associated with these citations did not ultimately impact this Court's decision and do not appear to have raised concern or captured the attention of the Commissioner. However, counsel is reminded that, under Rule 11 of the Federal Rules of Civil Procedure, she is responsible for the accuracy of any authority cited, regardless how that authority is identified and included in the briefing. The failure to conduct a reasonable inquiry into existing law before signing a legal document and submitting it to the Court can lead to the imposition of sanctions under Rule 11.

14

unprotected heights and moderate exposure to operational control of moving machinery and hazardous machinery. (Tr. 29). To the extent that the ALJ did discount Plaintiff's complaints of pain, the ALJ conducted an adequate assessment, consistent with SSR 16-3p and the relevant regulations and supported by substantial evidence. The ALJ expressly cited 20 C.F.R. § 404.1529, § 416.929, and SSR 16-3p, discussed Plaintiff's testimony regarding her abdominal pain and foot pain, discussed the relevant medical evidence, and specifically made a finding that Plaintiff's allegations regarding the nature, intensity, persistence, and limiting effects of her symptoms were not fully consistent with the medical evidence and other evidence in the record. (Tr. 24-25). Contrary to Plaintiff's argument that the ALJ relied solely on the objective evidence in discounting Plaintiff's complaints, a review of the record shows that the ALJ considered and discussed several of the relevant factors in evaluating Plaintiff's complaints of pain—in particular, Plaintiff's daily activities, which included caring for pets, doing household chores, driving, shopping, doing yoga; evidence that Plaintiff's gastrointestinal symptoms improved with medication and dietary changes; evidence that Plaintiff's hospital visits for acute episodes of abdominal pain and gastrointestinal symptoms often occurred following alcohol use; evidence that medication helped with Plaintiff's pain in her hands and feet; largely normal examination results generally showing no distress, only intermittent abdominal tenderness, normal bowel sounds, normal musculoskeletal range of motion, normal sensation and reflexes, normal coordination, and a normal gait; and the opinions of the state agency consultants that Plaintiff could perform medium work. The ALJ reasonably considered these factors and determined that Plaintiff's subjective complaints of pain were not as limiting as she alleged.

For these reasons and for the other reasons discussed in Defendant's brief, the Court finds the ALJ's analysis of Plaintiff's subjective complaints of pain was supported by substantial

evidence. The Court will therefore defer to that assessment. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'") (quoting *Julin*, 826 F.3d at 1086).

### C. RFC Assessment

Finally, the Court considers Plaintiff's argument that the RFC is not supported by substantial evidence, and specifically that it is not supported by "some medical evidence" from an examining physician that supports the RFC. A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015))."[T]he RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). However, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper*, 964 F.3d at 744 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).

After review of the record, the Court finds the RFC was supported by substantial evidence, including medical evidence. As discussed above, the RFC assessment included very significant limitations, both mental and physical. In formulating the RFC, the ALJ properly considered opinion evidence from the state agency medical consultants indicating that Plaintiff had fewer restrictions than he included in the RFC, opinion evidence from Plaintiff's treaters indicating that

Plaintiff had more restrictions than he included in the RFC, Plaintiff's treaters' notes regarding her condition, evidence that Plaintiff's symptoms improved with treatment and medication, Plaintiff's daily activities, and the largely normal objective findings in the record. Although the RFC does not specifically mirror any opinion in the record, that is not required. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") (quotation marks omitted); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.") (citation and quotation marks omitted). The ALJ properly determined Plaintiff's RFC based on all of the evidence.

The Court acknowledges that the record contains conflicting evidence regarding the effects of Plaintiff's impairments, and the ALJ certainly could have reached a different conclusion with regard to the appropriate weight to give to the various opinions and other evidence in the record. However, it is not the role of this Court to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Hacker v. Barnhart*, 459 F.3d 934, 936-38 (8th Cir. 2006).

**VII.    CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

17

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of March, 2026.